# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7041 | **DATE** | 2/20/2002 |
| **CASE TITLE** | Thomas, et al. vs. Peters III, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for summary judgment [7-1] on Counts I and III is denied, and defendants' motion for summary judgment [11-1] on Counts I - IV is granted, dismissing the case with prejudice. Case dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 21 2002 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/20/2002 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN THOMAS and RODNEY TRUSSELL, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 99 C 7041 |
| HOWARD A. PETERS, III B.J. WALKER and JEANNE WILLIAMS, | ) ) ) ) ) | DOCKETED FEB 21 2002 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Adrian Thomas ("Thomas") and Rodney Trussell ("Trussell"), each of whom was formerly employed as a Social Service Career Trainee ("SSCT") with the Illinois Department of Human Services ("IDHS"), brought this lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants Howard A. Peters, III ("Peters"), B.J. Walker ("Walker") and Jeannie Williams ("Williams") (collectively, "the defendants") violated their due process rights and their equal protection rights[1] under the Fourteenth Amendment. Plaintiffs seek declaratory and injunctive relief, including reinstatement of their employment, back pay and compensatory damages. Plaintiffs move for summary judgment on Counts I and III, the due process claims,

---

[1] As defendants correctly point out, the equal protection claims, Counts II and IV, are directed only at defendant Peters. Plaintiffs use the term "defendants" in their response and so, in addressing the equal protection claims, the court refers to "defendants" rather than "Peters."

1



whereas defendants move for summary judgment on all claims. For the reasons set forth herein, the court denies plaintiffs' motion and grants defendants' motion.

## FACTS[2]

During the time relevant to this litigation, Peters was the Secretary of IDHS, Walker was the Director of the Division of Community Operations for IDHS and Williams was the Office Administrator of IDHS's Park Manor local office. Defendants were acting under color of state law, specifically when making decisions about the employment status of plaintiffs. Thomas and Trussell were previously employed by IDHS as SSCTs.

The Illinois Department of Central Management Services ("CMS") has the authority to establish general rules on how employees may be hired and brought into State service. As relevant here, under CMS rules, a probationary period of six months is to be served by anyone who enters State service or commences a new period of continuous service. 80 Ill. Admin. Code tit. 80 § 302.300. Once an employee finishes the probationary period, the employee becomes a certified employee. Ill. Admin. Code tit. 80 §§ 301.310 and 302.625.[3] A certified employee may only be discharged for cause upon written charges approved by the Director of CMS and after a

---

[2]The facts as set forth herein, taken from the parties' statements of material facts and supporting materials, are undisputed unless otherwise indicated.

[3]Ill. Admin. Code tit. 80 § 302.310 Certified Status provides:

A probationary employee shall attain certified status only after successful completion of a probationary period. Notice of certification will be sent to the employee and agency by the Director promptly thereafter.

Ill. Admin. Code tit. 80 § 302.625 Definition of Certified Employee provides:

For purpose of rules respecting discipline and discharge, "certified employee" shall mean any employee currently employed in a position subject to jurisdiction B who has satisfactorily completed a required period of probation and attained certified status in any position during the employee's most recent period of continuous State service.

2

hearing. Ill. Personnel Code, 20 Ill. Comp. Stat. §§ 415/8b.16 and 415/11. A certified employee also has a right to appeal a proposed discharge to the Civil Service Commission. Ill. Admin. Code tit. 80 § 302.750.

IDHS maintains a local office system for administration of Temporary Assistance for Needy Families ("TANF"), medical assistance and food stamps. In a reorganization during 1997, caseworkers from the former Illinois Department of Public Aid were transferred to IDHS and "grand fathered in" as Human Services Caseworkers[4] to work in the newly created TANF program. As admitted by defendant Williams, newly hired Human Services Caseworkers were not equipped to handle a full caseload when they first started employment. Yet, because IDHS had to decide very quickly (within 6 months) whether a new Human Service Caseworker grasped the job and should become a certified employee, the caseworker was assigned a full, rather than partial, caseload. In an effort to give IDHS greater flexibility in evaluating caseworkers, plaintiffs contend, defendants devised a training program which would permit them to evade the job rights attendant to certified Human Services Caseworkers.[5] The Personnel Code, 20 Ill.

---

[4] At the time at the IDHS, Human Services Caseworkers were called P.A. Casework Specialists.

[5] The program is described on a document titled "Trainee or Apprenticeship Program" and sets forth the Curriculum Information for SSCTs:

> [Trainee] [r]eceives supervised on-the-job training in managing of a public assistance caseload by learning to perform the professional casework duties in such categories as Aid to Families with Dependent Children (AFDC), including Earned Income cases, Medical Assistance No Grant (MANG) including Spenddown cases, Transitional Assistance, Aid to the Aged, Blind and Disabled (AABD), Group Care, Food Stamps, Presumptive Eligibility or other such cases; learns to explain work incentive programs and to encourage client participation, learns to assist clients in resolving problems that interfere with work or educational opportunities.
>
> The Trainee will receive formal classroom training relative to social work concepts and methods essential for the provision of services, interviewing and case recording, basic concepts of human growth and development and basics for family living, etc.

(continued...)

Comp. Stat. § 415/8b.17, and the Administrative Code, Ill. Admin. Code tit. 80 §§ 302.170 and 302.175, grant authority to the Director of CMS, at the request of a Department, to establish training programs.[6] IDHS's Trainee and Apprenticeship Program ("the program") was approved by CMS on July 1, 1997. According to a Memorandum of Understanding of October 10, 1989 between the American Federation of State, County, and Municipal Employees ("AFSCME") and the State of Illinois, the training program provided that SSCTs would be trainees for up to twelve

---

[5](...continued)
Upon successful completion of their training program, interns will complete and submit form CMS-100B (promotional application) for their targeted title.

(Pls.' LR 56.1(b)(3) Statement, Ex. 1.) In their Rule 56.1 statement of material facts in support of their motion, plaintiffs state that there is no manual or documentation about how the SSCT Program is to be operated. Because they rely on the Trainee and Apprenticeship Program exhibit in their response to defendants' motion, the court deems this material undisputed.

[6]Applicable portions of the related statutes and code are as follows:

Chapter 20 Ill. Comp. Stat. § 415/8b.17 provides:

For trainee programs, and for the appointment of persons to positions in trainee programs, hereinafter called "trainee appointments." Trainee appointments may be made with or without examination, with consideration of the needs of Illinois residents, but may not be made to positions in any class that is not in a trainee program approved by the Director of Central Management Services. Trainee programs will be developed with consideration of the need for employees with linguistic abilities or cultural knowledge. The Director shall work with the Department of Human Services and the Department of Employment Security in trainee position placements for those persons who receive benefits from those Departments. Persons who receive trainee appointments do not acquire any rights under jurisdiction B of the Personnel Code by virtue of their appointments.

Ill. Admin. Code tit. 80 § 302.170 Programs provides:

The Director may establish trainee or apprenticeship programs for new and/or incumbent employees in accordance with the Position Classification Plan or at the request of an operating agency. . . .

Ill. Admin. Code tit. 80 § 302.175 Appointments provides:

Appointment to a trainee position shall be made pursuant to a trainee or apprenticeship program established and approved in accordance with Section 302.170.

months.[7] The Memorandum of Understanding further provided that a SSCT "would have no right to . . . [u]tilize the grievance procedure in the event of discipline, discharge, or demotion, except those employees who held certified status during their most recent period of continuous service. . . ." (Defs.' Statement of Uncontested Facts ¶ 25).

IDHS's office administrator and management team at each local office had the authority to determine how many cases each SSCT would be assigned and the caseload varied at different local offices. SSCTs had to receive assignments germane to the work of Human Services Caseworkers. A SSCT could be evaluated to become a Human Services Caseworker after six months, but promotion was not automatic. Rather, SSCTs were promoted based on successful completion of the training program, the individual trainee's grade on a promotional examination, and the ability to accept the responsibility of servicing a full caseload as a Human Services Caseworker.

Unlike Human Services Caseworkers, the SSCTs were required to have a college degree in relevant areas. SSCTs received a salary paid by the State and the method of salary payment was the same as for caseworkers. SSCTs were required to abide by IDHS rules and after six months of State service became eligible to participate in the State's deferred compensation plan and retirement system. Trainees were evaluated on standard CMS evaluation forms, the same forms used for evaluations of all bargaining unit employees of IDHS.

On or about November 2, 1998, Thomas was hired by IDHS as a SSCT. Thomas completed six months of employment with IDHS on April 2, 1999, and handled a caseload of 130 TANF cases. Thomas's evaluation from April 30, 1999, stated that he had met his objectives

---

[7]The period of time that a SSCT may be in that position has since been increased to eighteen months.

5

and that his work performance was evaluated as "meets expectations." On May 17, 1999, the CMS issued Thomas a grade of "A." However, on or about June 30, 1999, Peters signed or caused to be signed a Personnel/Position Action Form that terminated Thomas without a hearing.[8]

Trussell began his employment with IDHS in August of 1998. Trussell completed his six months of employment with IDHS in February, 1999. Trussell was issued a grade of "A" by CMS as of March 17, 1999. On or about June 28, 1999, Williams recommended the termination of Trussell; thereafter, Williams gave Trussell a memorandum which informed him of his last day of work. On or about August 4, 1999, Walker, with Peters's approval, terminated Trussell without a hearing.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324;

---

[8]While defendants cite the reasons why each plaintiff was terminated, the court must view the facts in a light most favorable to plaintiffs. The reasons given for the termination are irrelevant in evaluating plaintiffs' claims.

6

*Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella* v. *Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## DISCUSSION

Plaintiffs take the position that they had a property interest in continued employment after six months of service, of which they were deprived without due process of law. Plaintiffs' equal protection claim, according to the complaint, seems to be that SSCTs were performing the same work as Human Services Caseworkers and were otherwise similarly situated to them, but IDHS has treated them differently without a rational relation to a legitimate state interest. Curiously, however, plaintiffs' brief poses a different equal protection argument, that because some had to remain trainees even more than 12 months while others were promoted in less than 12 months, according to the discretion of the local office administrators, IDHS is treating similarly situated persons differently without a rational relation to any legitimate governmental purpose. Defendants contend that plaintiffs had no property interest in continued employment under the CMS rules and they were not entitled to a hearing either before or after their discharge. Defendants contend that they did not violate plaintiffs' equal protection rights because

7

defendants did not treat them any differently from similarly situated employees and plaintiffs cannot demonstrate that the training program is not rationally related to a legitimate state interest.

### A. Counts I and III: Due Process

"A cause of action under § 1983 requires a plaintiff to demonstrate that he was deprived of a right secured by the Constitution or a federal law at the hand of someone acting under color of law." *Hanania* v. *Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000). A procedural due process claim must be based on a violation of a protected liberty or property interest in employment. *See Farmer* v. *Lane*, 864 F.2d 473, 478 (7th Cir. 1988). "Property interests in employment may be created by express or implied contracts, municipal ordinances or state laws including those 'rules [or] understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* at 478 (citing to *Board of Regents of State Colls. et al.* v. *Roth*, 408 U.S. 564, 577 (1972)). "The adequacy of any claim of entitlement 'must be decided by reference to state law.'" *Id.* (citing to *Bishop* v. *Woods*, 426 U.S. 341, 344 (1976)); *see Village of Fox River Grove* v. *The Pollution Control Bd.*, 299 Ill. App. 3d 869, 877-78, 880, 702 N.E.2d 656, 662, 664 (2d Dist. 1998) (purporting that administrative rules must be given their plain meaning).

Plaintiffs rest their alleged property interest in the Personnel Code and CMS Administrative Rules. They posit that while employed as SSCTs, they were simultaneously fulfilling their probationary period applicable to Human Service Caseworker positions and, therefore, after six months became certified employees entitled to the protections of jurisdiction B of the Personnel Code, that portion which applies to employees who have satisfactorily completed a six month probationary period. 20 Ill. Comp. Stat. 415/8b.17; Ill. Admin. Code tit. 80 § 302.310 set out at note 3 above. Plainly, plaintiffs were neither certified nor entitled to

8

certification, as subpart C of the Personnel Code, Ill. Admin. Code tit. 80 §§ 302.170 through 302.180 (which allows a department such as IDHS to create a training program that does not provide the same process for certification as for permanent employment) specifically provides that "[a]ny trainee appointed to a position in a trainee class without open competitive examination shall obtain a probationary appointment in the title for which he/she is training only after he/she has passed the appropriate open competitive examination and his/her name has been reached on the resulting eligible lists . . . ." Ill. Admin. Code tit. 80 § 302.180(b).[9] Moreover, trainees are specifically excluded from jurisdiction B protections under subpart C, which provides that trainees are essentially employees at will and can be terminated for any non-discriminatory reason. *Accord Kuhn v. Johnson*, 648 F. Supp. 548, 549 (N.D. Ill. 1988) ("Conversely, if Plaintiff was merely a trainee employee, he was properly discharged without the necessity of notice and hearing.").[10] Thus, in order for plaintiffs to prevail on their due process

---

[9]Ill. Admin. Code tit. 80 § 302.180 Limitations on Trainee Appointments provides:

a) Any trainee appointed to a position in a trainee class in accordance with the Rules of the Department concerning Examinations and Eligible Lists, Sections 302.10 through 302.160, shall be appointed to a permanent position only after passing an appropriate competitive promotional examination for the title for which he/she is training and his/her name has been reached on the promotional eligible list.

b) Any trainee directly appointed in a training class without open competitive examination shall obtain a probationary appointment in the title for which he/she is training only after he/she has passed the appropriate open competitive examination and his/her name has been reached on the resulting eligible lists, except that a trainee appointed to serve in a highly technical or management training program approved by the Director of Central Management Services shall obtain probationary appointment in the title for which he/she is being trained only after successful completion of the approved training program, and after passing an appropriate competitive promotional examination for the title for which he/she is training and his/her name has been reached on the promotional eligible list.

[10]Plaintiffs rely on *Kuhn v. Johnson*, 648 F. Supp. 548 (N.D. Ill. 1988), to argue that, as trainees, they had a continuous expectation of employment and became certified after six months of employment. *Kuhn*, however, neither supports their argument nor defeats defendants' motion. In *Kuhn*, the court was asked to determine whether

(continued...)

claim, this court must conclude that IDHS's trainee program itself violates the Personnel Code and the violation deprived plaintiffs of a property interest in continued employment under the Personnel Code.

Plaintiffs argue that the Illinois Administrative Code authorizes an agency such as IDHS to establish trainee positions in conformity with specified conditions. Ill. Admin. Code tit. 80 § 302.170. Plaintiffs continue, the IDHS training program is a "sham" because the SSCT position "is not intended to take a person from a disadvantaged background and provide them with training to give them curriculum instruction." (Pls.' Mem. in Support of Summary Judgment on Counts I and III at p. 10.) Rather, the SSCTs are simply newly hired caseworkers doing the same job as Human Services Caseworkers, but IDHS is allowed to require a higher level of qualification than is specified for Human Services Caseworkers and to impose a longer time to evaluate a trainee than a probationary Human Services Caseworker. According to plaintiffs, the training program is nothing but a way to evade the Personnel Code.

Section 302.170, on which plaintiffs rely, designates several general purposes of a trainee program, including the one plaintiffs identify, (e) to train the disadvantaged, but this is not the only permissible purpose:

---

[10](...continued)
the plaintiff was a "certified" employee or merely a "trainee" employee of the State at the time that the Department of Revenue discharged him. *Id.* at 548-49. The court held that plaintiff was a certified employee because he had previously been certified by another State agency before joining the trainee program in the Department of Revenue. *Id.* at 550-51. Here, unlike the plaintiff in *Kuhn*, plaintiffs were trainees during their entire time of employment with the State. They never completed a training or probation period while employed with another State agency before they joined the trainee program with IDHS. They were never promoted to the targeted positions and never became certified employees according to Ill. Admin. Code tit. 80 § 302.310. Accordingly, *Kuhn* does not support plaintiffs' claims that defendants violated their rights to due process.

10

> . . .A trainee or apprenticeship program may be established for one or more of the
> following purposes and shall be for a duration not to exceed the limits stated in
> the class specifications therefor.
>
> a) To develop, through an established program of supervised training and experience,
> qualified employees for positions which are, in the judgment of the Director, difficult to
> fill with qualified employees;
>
> b) To cooperate with recognized educational institutions and organizations by
> making available opportunities for supervised training and work experience
> required for satisfactory completion of such cooperative or affiliate training programs;
>
> c) To provide specialized orientation and training necessary for satisfactory
> performance of jobs in technical or professional fields;
>
> d) To attract and interest better qualified employees to State service by selecting
> outstanding persons and giving them supervised work experience during their
> period of academic training.
>
> e) To provide training or developmental work experience for the socially,
> culturally, economically or physically disadvantaged which would assist them in
> acquiring or augmenting employment skills and/or provide employment
> opportunities of limited duration.

Purposes (a) and (d), for example, fit fairly closely with the situation presented by the facts. Plaintiffs do not assert that the program was not approved by the Director of CMS or otherwise failed to meet requirements of the law, and the court cannot conclude that IDHS's trainee program violated the Personnel Code merely because it was not created with the purpose to help the disadvantaged. As a result, plaintiffs have failed to show that they had a property interest in continued employment at IDHS and therefore, defendants are entitled to judgment as a matter of law on Counts I and III.

**B.   Count II and IV: Equal Protection**

Defendants move for summary judgment on Counts II and IV, in which plaintiffs claim that defendants denied them equal protection of the laws by failing to certify them as state

11

employees after six months of state service. Defendants argue that plaintiffs cannot establish that they were treated differently from similarly situated employees, that defendants' actions were not rationally related to a legitimate state interest, or that defendant Peters had sufficient personal involvement to become individually liable to plaintiffs.

Under the equal protection clause, "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1993).

> An equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals.
> * * *
> Absent either a fundamental right or a suspect class, a court need only apply a rational basis to review the challenged state action. . . . Under the rational basis test, a state action is entitled to a presumption of validity. . . . We will therefore not disturb a particular state action as long as it is rationally related to a legitimate government interest.

*Smith* v. *Severn and North Boone Cmty. Sch. Dist. 200, Boone County*, 129 F.3d 419, 429 (7th Cir 1997) (internal citations omitted). To determine whether plaintiffs were similarly situated, the court "must look to all relevant factors, the number of which depends on the context of the case." *Chavez* v. *Illinois State Police*, 251 F.3d 612, 636 (7th Cir. 2001) (noting that the requirement must not be "too narrowly" defined). The court is to make a common-sense inquiry, which is "essentially factual [in] nature," into whether plaintiff has demonstrated that he shares "common features essential to a meaningful comparison." *Id.* As indicated above, the discrimination of which plaintiffs complain is not entirely clear. The complaint seems to allege that SSCTs were performing the same job as Human Services Caseworkers but only SSCTs were denied job

12

protection. Their brief, however, argues that they were discriminated against because some trainees were promoted after six months and others had to wait twelve months or longer. Plaintiffs merely speculate that one or more trainees in different local offices were promoted after six months, but even if true, plaintiffs can cite no authority that even suggests that the equal protection clause requires an employer to evaluate and promote its trainees on precisely the same timetable, or that all administrators in local offices have to treat a single class of employees precisely alike. *See Smith*, 129 F.3d at 429 (determining that student was not similarly situated to other students involved in misconduct because his prior history at the school reflected more serious discipline. "[Defendant] was free to fashion a remedy appropriate to the particular circumstances."). According to defendants, trainees are not promoted until they can demonstrate the ability to handle a full caseload as a Human Services Caseworker, which is consistent with the purpose of the training program, to allow the trainee to develop the knowledge and practical skills necessary to become a successful caseworker and to ensure IDHS that its employees are well equipped to assist and counsel its public aid clientele. Plaintiffs fail to respond to these assertions and thus fail to rebut the presumption that the IDHS's purposes are legitimate.

If, however, plaintiffs are claiming that the SSCTs as a class were treated differently from Human Services Caseworkers without a legitimate purpose, the argument is at least colorable, but it cannot succeed. Even if it is assumed that the plaintiffs were doing the same work as Human Services Caseworkers, it is still undisputed that the trainee program was rationally related to the defendants proffered legitimate state interest. This situation is completely distinguishable from the facts in *Olschock v. Village of Skokie*, 541 F.2d 1254, 1260 (7th Cir. 1976), on which plaintiffs rely for the principle that defendants "cannot act in a wholly arbitrary manner in

13

purporting to distinguish between employees." (Pls.' Resp. at p. 7.) In *Olschock*, the court held that the defendants acted arbitrarily when they suspended police officers who were not represented by counsel at their hearing and discharged those officers who were represented by counsel. 541 F.2d at 1260. There, the sole deciding reason had nothing to do with an individual's underlying conduct and could readily be described as arbitrary. Here, defendants assert that employees will be better qualified for the permanent position after having completed a training program. This is not an arbitrary discrimination but one that intuitively makes sense. Further, plaintiffs have no evidence that IDHS has used the trainee program as a means to deprive SSCTs of the opportunity for permanent employment. Rather, they concede that trainees were made eligible for certification as early as 6 months in some instances and none longer than the authorized 12-month (or, currently, 18-month) training period. In short, based on the undisputed facts in this case, plaintiffs have failed to demonstrate that defendants have deprived them of the equal protection of the laws.

## ORDER

For the reasons stated above, the court denies plaintiffs' motion for summary judgment [#7] on Counts I and III and grants defendants' motion for summary judgment [#11] on plaintiffs' Counts I-IV, dismissing the case with prejudice.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 19, 2002

14